IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| NEXMED HOLDINGS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>BLOCK INVESTMENT, INC., a Bahama corporation, CLEALON B. MANN, an individual, and THE SOMERSET GROUP, INC., a Nevada corporation,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ENHANCED DAMAGES AND PREJUDGMENT INTEREST AND GRANTING PLAINTIFF'S MOTION FOR A DECLARATION THAT THE CASE IS EXCEPTIONAL AND FOR ITS REASONABLE ATTORNEY'S FEES<br><br>Case No. 2:04-CV-288 TS |

This matter comes before the Court on Plaintiff's Motion for Enhanced Damages and Prejudgment Interest and Plaintiff's Motion for a Declaration that the Case is Exceptional and for its Reasonable Attorney's Fees. The Court heard oral arguments on the Motions on June 22, 2006, and took the Motions under advisement at the close of the hearing. Having considered the

1

arguments of counsel, the materials provided by the parties, and the file, the Court is prepared to rule on the Motions. For the reasons set out fully below, the Court will grant in part and deny in part Plaintiff's Motion for Enhanced Damages and Prejudgment Interest, and will grant Plaintiff's Motion for a Declaration that the Case is Exceptional and for its Reasonable Attorney's Fees. The Court will not, however, grant an award of attorney's fees against Defendants' counsel personally under 28 U.S.C. § 1927.

## I. PLAINTIFF'S MOTION FOR ENHANCED DAMAGES AND PREJUDGMENT INTEREST

A.  ENHANCED DAMAGES

Pursuant to 35 U.S.C. § 284, the Court may increase the damages up to three times the amount found or assessed. "An award of enhanced damages for infringement, as well as the extent of the enhancement, is committed to the discretion of the trial court."[1] "The paramount determination in deciding to grant enhancement and the amount thereof if the egregiousness of the defendant's conduct based on all the facts and circumstances."[2]

The Federal Circuit has identified nine factors for courts to consider when determining whether damages should be enhanced: (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when it knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior as a party to the litigation; (4) the defendant's size and financial condition; (5) the closeness of the case; (6) the duration of defendant's misconduct;

---

[1] *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826 (Fed. Cir. 1992) *abrogated in part on other grounds by Markman v. Westview Insts., Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc).

[2] *Id*.

(7) any remedial action by the defendant; (8) the defendant's motivation for harm; and (9) whether defendant attempted to conceal its misconduct.[3]

1. WHETHER THE INFRINGER DELIBERATELY COPIED THE IDEAS OR DESIGN OF ANOTHER

Here, it is unclear whether Defendants deliberately copied the '352 patent. Much of this information would have come from the testimony of Chester Heath, which the Court did not allow the jury to hear. Therefore, the Court finds that this factor is neutral and does not weigh in favor of or against enhancing damages.

2. WHETHER THE INFRINGER, WHEN IT KNEW OF THE OTHER'S PATENT PROTECTION, INVESTIGATED THE SCOPE OF THE PATENT AND FORMED A GOOD-FAITH BELIEF THAT IT WAS INVALID OR THAT IT WAS NOT INFRINGED

It is undisputed that Clealon Mann knew of the '352 Patent since at least 1993. Defendants received the opinion of Chester Heath, the individual who made the Cold Sore Eliminator device, concerning the device. Since the Court did not allow Chester Heath to testify, it is not clear whether Defendants formed a good-faith belief, based on Chester Heath's statements, that the Cold Sore Eliminator did not infringe on the '352 Patent. Thus, this factor is neutral and does not weigh in favor of or against enhancing damages.

3. THE INFRINGER'S BEHAVIOR AS A PARTY TO THE LITIGATION

Plaintiff argues that Defendants' conduct throughout this litigation weighs in favor of enhancing damages. Plaintiff points to Defendants' attempts to delay trial, Defendants' counsel's failure to appear at hearings, and Defendants' attempt to transfer property owned by Block to Klenell Mann, which the Court did not allow.

---

[3] *Id*. at 826–27.

The Court finds that these activities, as well as others, weigh in favor of enhancing damages.

4.  THE DEFENDANTS' SIZE AND FINANCIAL CONDITION

Defendants are not a large corporation. Clealon Mann is an individual and Block Investment is a small company run by Nanell Mann. This element, therefore, weighs against enhancing damages.

5.  THE CLOSENESS OF THE CASE

This was not a close case. The Court found as a matter of law that Defendants infringed the '352 Patent. Defendants clearly infringed the Patent and the jury found that infringement to be willful. Therefore, this element weighs in favor of enhancing damages.

6.  THE DURATION OF DEFENDANT'S MISCONDUCT

It is not clear how long Defendants infringed on the patent. Therefore, this factor is neutral.

7.  ANY REMEDIAL ACTION BY THE DEFENDANTS

Defendants did not take any remedial action during the course of this litigation. Defendants argue that this favor weighs against enhancing damages because "they did not oppose injunctive relief and ceased all infringing conduct immediately after the verdict was returned."[4] This action was not remedial, however. This action was required as a result of the Court's ruling and the jury's finding of willful infringement. That Defendants continued their infringing activity up to when the verdict was returned shows a lack of remedial action. Therefore, this factor weighs in favor of enhancing damages.

---

[4] Docket No. 184, at 15.

8. THE DEFENDANT'S MOTIVATION FOR HARM

There has not been a showing that Defendants had any motivation to harm Plaintiff. Defendants further argue that Plaintiff failed to show they were damaged in any way. Thus, this factor weighs against enhancing damages.

9. WHETHER DEFENDANT ATTEMPTED TO CONCEAL ITS MISCONDUCT

Plaintiff argues that Defendants attempted to conceal their misconduct by manipulating their profit figures. Plaintiff points out that many of the items deducted from profits were personal items including speeding tickets, rent paid to themselves, legal fees for other matters, and other items.

Defendants contend, however, that they did not attempt to conceal their infringing activity. They sold the Cold Sore Eliminator device in an open and notorious manner. Thus, they argue that Plaintiff's argument with regard to hiding profits is without merit.

Defendants never attempted to hide the fact that they were selling the Cold Sore Eliminator device. Defendants sold the device open and notoriously and even advertised the device in widely circulating publications. Therefore, the Court finds that Defendants did not attempt to conceal their infringement. Thus, this factor weighs against enhancing damages.

Examining these factors, the Court finds that they are evenly split between those which weigh in favor of awarding enhanced damages, those which weigh against, and those which are neutral. Because of this result, the Court is unable to find that an award of enhanced damages is proper in this case. Therefore, Plaintiff's Motion for Enhanced Damages is denied.

B.      PREJUDGMENT INTEREST

"[I]n the federal context, this Court has adopted a preference, if not a presumption, for prejudgment interest."[5]  In determining whether to award prejudgment interest, the Court should consider: "(1) whether an award of prejudgment interest would serve to compensate [Plaintiff]; and (2) if so, whether equity precludes an award."[6]

The Court finds that prejudgment interest will serve to compensate and is necessary to fully compensate Plaintiff.  Upon review of the record as a whole, equity does not preclude an award of prejudgment interest.  Therefore, interest should be awarded.  Plaintiff, however, has not presented the Court with information regarding interest on the sales of the Cold Sore Eliminator.  Thus, the Court will only grant an award of prejudgment interest on the up-front payment discussed by Vivian Liu during trial.  Ms. Liu testified that it would be common to pay an up-front amount of between $100,000 to $1,000,000, depending on the royalty rate.  Based on this testimony, the Court will award prejudgment interest on the $100,000 the jury awarded Plaintiff against Defendant Mann.

The next question is what rate to use.  Federal courts are "free to choose any interest rate which would 'fairly compensate the plaintiff for the delay in the receipt of payment.'"[7]  Plaintiff has provided three alternative rates: (1) the rate set out in Utah Code Ann. § 15-1-1; (2) the prime

---

[5]*United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1236 (10th Cir. 2000).

[6]*Id*. at 1237.

[7]*Towerridge, Inc. v. T.A.O., Inc.*, 111 F.3d 758, 764 (10th Cir. 1997) (quoting *United States ex rel. C.J.C., Inc. v. Western States Mechanical Contractors, Inc.*, 834 F.2d 1533 (10th Cir. 1987)).

rate; or (3) the T-bill rate. The Court will apply the T-Bill rate.[8] This Court has stated that "this particular measure of the market rate for prejudgment interest is attractive because it makes the prejudgment rate consistent with the post-judgment rate."[9] Under this rate, Plaintiff is entitled to $8,371 from Defendant Mann.

## II. PLAINTIFF'S MOTION FOR A DECLARATION THAT THE CASE IS EXCEPTIONAL AND FOR ITS REASONABLE ATTORNEY'S FEES

A.     35 U.S.C. § 285

35 U.S.C. § 285 provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."[10] "A trial court undertakes a two-step inquiry when adjudicating a request for attorney's fees. The court examines first whether there is clear and convincing evidence that the case is exceptional, and second, whether an award of attorney fees to the prevailing party is warranted."[11]

"Exceptional cases are normally those involving bad faith litigation or those involving inequitable conduct by the patentee in procuring the patent."[12] "The prevailing party may prove the existence of an exceptional case by showing: inequitable conduct before the PTO; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or willful

---

[8]*See Amoco Production Co. v. United States*, 663 F.Supp. 998, 1001 (D. Utah 1987) (applying fifty-two week Treasury Bill rate).

[9]*Id*. at 1002.

[10]35 U.S.C. § 285.

[11]*Evident Corp. v. Church & Dwight Co., Inc.*, 399 F.3d 1310, 1315 (Fed. Cir. 2005).

[12]*Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 267 F.3d 1370, 1380 (Fed. Cir. 2001).

7

infringement."[13] "Bad faith and willful infringement are not the only criteria whereby a case may be deemed to be 'exceptional,' although when either is present the requirement is more readily met."[14] "Litigation misconduct and unprofessional behavior are relevant to the award of attorney fees, and may suffice, by themselves, to make a case exceptional."[15] "Such conduct must be supported by clear and convincing evidence."[16]

Plaintiff cites to a number of factors which it argues warrant the finding that this is an exceptional case under 35 U.S.C. § 285. First, the jury found that Defendants' infringement was willful. Second, Plaintiff cites various instances of litigation misconduct, such as filing an untimely answer on behalf of Defendant Somerset and filing frivolous counterclaims. Third, Defendants' attempt to transfer property to Klenell Mann, which the Court prevented. Fourth, slow responses to discovery requests, which resulted in two Motions to Compel which were both granted. Fourth, Defense counsel's failure to appear at or appearing late to hearings.

The Court finds that this case is exceptional for the following reasons. First, the jury made a finding of willful infringement. This factor weighs in favor of finding this case exceptional. Second, the Court finds that litigation misconduct has occurred in this case. Defendant Somerset attempted to file an Answer a year-and-a-half late, without seeking leave of the Court. Defendants sought to stay this matter just before trial in order to proceed before the Patent and Trademark Office. Third, Plaintiff had to bring two Motions to Compel, both of

---

[13] *Id.*

[14] *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1574 (Fed. Cir. 1996).

[15] *Brasseler*, 267 F.3d at 1380.

[16] *Beckman Inst., Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1551 (Fed. Cir. 1989).

8

which were granted by Chief Magistrate Judge Alba. Fourth, Defendants' counsel failed to appear at one hearing and appeared late to another. Finally, Defendants attempted to transfer property to Klenell Mann, which the Court set aside. The Court need not address the other litigation misconduct that occurred in this case.

Based on these things, the Court finds that this case is exceptional and a grant of attorney's fees is warranted.

B.  REASONABLENESS OF ATTORNEY'S FEES

The next issue is whether the attorney's fees sought by Plaintiff are reasonable. Plaintiff seeks attorney's fees in the amount of $446,924.50. Plaintiff supports this amount with affidavits and proper documentation. Defendants argues that this amount is unreasonable.

"'To determine a reasonable attorneys fee, the district court must arrive at a 'lodestar' figure by multiplying the hours plaintiffs' counsel reasonably spent on the litigation by a reasonable hourly rate.'"[17] "'[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.'"[18]

"The district court should take the first step in calculating the lodestar by determining the number of hours reasonably spent by counsel for the party seeking fees."[19] "Counsel for the party claiming the fees has the burden of proving hours to the district court by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific

---

[17]*Case v. Unified School Dist. No. 233*, 157 F.3d 1243, 1249 (10th Cir. 1998) (quoting *Jane L. v. Bangerter*, 61 F.3d 1505, 1509 (10th Cir. 1995)).

[18]*Id.* (quoting *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1201 (10th Cir. 1986)).

[19]*Id.* at 1250.

9

tasks."[20] The Court may reduce the number of hours when the time records provided are inadequate and may reduce the actual number of hours expended to a reasonable number to ensure services an attorney would not properly bill to his or her client are not billed to the adverse party.[21] "[T]he district court should base its hourly rate award on what the evidence shows the market commands for civil rights or analogous litigation."[22]

Defendants primary contention is that the fees charged by Plaintiff's attorneys are unreasonable. Significantly, Defendants do not argue that the number of hours spent were excessive. Rather, Defendants argue that Plaintiff could have hired a less expensive attorney from Utah, instead of retaining counsel from Chicago. Defendants have cited no authority to support their contention that a plaintiff may not select their choice of counsel if a cheaper alternative is available, and the Court will not make such a ruling.

Plaintiff has supported its request for attorney's fees, and the rate it has charged, by attaching the American Intellectual Property Lawyers Association Report of the Economic Survey ("the Report"). Defendants argues that this Report is "self-serving," but have not presented any evidence to rebut Plaintiff's claim that the rate charged by Plaintiff is excessive, other than their own statements.

The Court finds that the Report is helpful in determining the reasonableness of Plaintiff's attorney's fees and will rely upon on to make this determination. The Report provides that the mean hourly billing rate for an intellectual property partner in Chicago is $372, while the average

---

[20]*Id.*

[21]*Id.*

[22]*Id.* at 1255.

10

in "other west" is $312. The Report also states that a partner with 35 or more years of intellectual property law has an average rate of $410. An associate with a Chicago firm has an average billing rate of $241, while the "other West" rate is $237. The Report also provides that an associate with a doctorate (non-law) degree has an average billing rate of $272.

The Affidavit of Talivaldis Cepuritis sets out the billing rates for the attorneys involved in this case. Mr. Cepuritis billed $400 per hour in 2004 and $440 in 2005 and 2006. While this rate is slightly higher than the average, it is not so far above the average to make it unreasonable. This is especially true considering that Mr. Cepuritis has over 40 years of experience. Mr. Kuo has a billing rate of $230 in 2004, $280 in 2005, and $320 in 2006. These rates are consistent with, and are even below, the average rate in Chicago. Mr. Ross has a billing rate of $260. It should be noted that Mr. Ross has a Ph.D. Thus, his billing rate is below the average billing rate of someone who has a doctorate (non-law) degree. Finally, Mr. Kellam has a billing rate of $220. This is below both the Chicago and "other West" rate.

Based on these comparisons, the rates charged by Plaintiff's attorneys are consistent with the intellectual property market in Chicago and are generally below the average rate listed in the Report. Those rates that are slightly higher than those contained in the Report are counterbalanced by those that are lower. Thus, the Court finds that the rates charged by Plaintiff's attorneys are reasonable and are what the market commands. Therefore, the Court will award Plaintiff attorney's fees in the amount of $446,924.50.

C.     28 U.S.C. § 1927

Plaintiff seeks attorney's fees from Defendants' counsel personally pursuant to 28 U.S.C. 1927. 28 U.S.C. § 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.[23]

The Tenth Circuit has stated that the proper standard under "§ 1927 is that excess costs, expenses, or attorney's fees are imposable against an attorney personally for conduct that, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court."[24] "They may also be awarded 'when an attorney is cavalier or bent on misleading the court; intentionally acts without a plausible basis; [or] when the entire course of the proceedings was unwarranted.'"[25] "However, an award should be made under § 1927 only in instances evidencing a serious and standard disregard for the orderly process of justice."[26] The Tenth Circuit has emphasized that this is an "extreme standard."[27]

Here, Plaintiff argues that it should receive attorney's fees from Defendants' counsel personally for the same reasons which make this case exceptional, as discussed above. Plaintiff

---

[23] 28 U.S.C. § 1927.

[24] *Braley v. Campbell*, 832 F.2d 1504, 1512 (10th Cir. 1987) (en banc). The Court applies Tenth Circuit law instead of Federal Circuit law here because the Federal Circuit applies the law of the regional circuit when addressing claims under 28 U.S.C. § 1927. *See Phonometrics, Inc. v. Westin Hotel Co.*, 350 F.3d 1242, 1246 (Fed. Cir. 2003).

[25] *Dominion Video Satellite, Inc. v. Echostar Satellite LLC*, 430 F.3d 1269, 1278 (10th Cir. 2005) (quoting *Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1342 (10th Cir. 1998) (quotations and internal citations omitted)).

[26] *White v. American Airlines, Inc.*, 915 F.2d 1414, 1427 (10th Cir. 1990) (internal quotation marks and citations omitted).

[27] *Id*.

has not met the extreme standard required under § 1927. Therefore, Plaintiff's Motion for an award of attorney's fees from Defendants' counsel is denied.

III. CONCLUSION

It is therefore

ORDERED that Plaintiff's Motion for Enhanced Damages and Prejudgment Interest (Docket No. 179) is GRANTED IN PART AND DENIED IN PART. The Court will deny Plaintiff's Motion for Enhanced Damages, but will grant Plaintiff's Motion for Prejudgment Interest. It is further

ORDERED that Plaintiff's Motion for a Declaration that the Case is Exceptional and for its Reasonable Attorney's Fees (Docket No. 188) is GRANTED. The Court, however, will not impose attorney's fees on Defendant's counsel personally under 28 U.S.C. § 1927.

DATED   July 6, 2006.

BY THE COURT:

_____
TED STEWART
United States District Judge